# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | **JUDGE RICHARD L. SPEER** |
| Adam T. Malone | ) | Case No. 10-3113 |
| Debtor(s) | ) | (Related Case: 10-30076) |
| Adam T. Malone | ) | |
| Plaintiff(s) | ) | |
| v. | ) | |
| Higher Education Student Assistance | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the Defendant, New Jersey Higher Education Student Assistance Authority, for Summary Judgment and Memorandum in Support. (Doc. No. 36). The Defendant's Motion for Summary Judgment is brought against the Plaintiff/Debtor's Complaint to Determine the Dischargeability of a student-loan obligation under 11 U.S.C. § 523(a)(8). (Doc. No. 1). The Plaintiff filed a response to the Defendant's Motion for Summary Judgment, objecting to the relief sought by the Defendant. (Doc. No. 49). In support of their respective positions, each of the Parties submitted written arguments; as well, each of the Parties filed supporting documentation. The Court has now had the opportunity to review these materials, and based upon this review, the Court, for the reasons set forth below, finds that the Defendant's Motion for Summary Judgment should be Denied.

## FACTS

The Debtor, Adam T. Malone, is before this Court, having filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. The Debtor filed his petition for bankruptcy relief on January 8, 2010. At the time he commenced his bankruptcy case, the Debtor was unemployed. Since he commenced his bankruptcy case, the Debtor has obtained employment. From his employment, the Debtor earns a gross monthly salary of $3,797.73, equating to an annual salary of $45,572.76.

In seeking bankruptcy relief, the Debtor reported having assets valued at $3,625.00. Against his assets, the Debtor reported unsecured debts totaling $60,425.58. The majority of his unsecured debt, $50,836.00, was incurred by the Debtor to finance his attendance at the "Commercial Divers Academy of Eastern Seaboard" where, in February of 2009, the Debtor received a degree in commercial diving.

Shortly after graduating, the Debtor obtained part-time employment, working in a position which corresponded to his degree in commercial diving. According to the Debtor, however, he subsequently terminated this employment "due to lack of work." (Doc. No. 50, ¶ 3). In the position he now holds with his present employer, the Debtor related that the debts he incurred to finance his education do not afford him any benefit.

Since incurring his student-loan debts, the Debtor has obtained two deferments: (1) the first was obtained almost immediately after graduation, on March 7, 2009; (2) the second deferment was obtained approximately six months later, on August 26, 2009. Using a credit card, the Debtor also made one payment of $198.00 on his obligation to the Defendant.

When he commenced his bankruptcy case, the Debtor set forth that his educational obligations were held by two entities: (1) the Defendant, whose claim totaled $44,778.00; and (2) the United States Department of Education, whose claim totaled $6,058.00. After filing his bankruptcy case, the Debtor commenced the action now before the Court against these two entities, seeking a determination by the Court that his student loans were dischargeable based upon the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). Thereafter, pursuant to an order entered by the Court, the United States was dismissed as a party from this action. (Doc. No. 40).

At the time he commenced his action to discharge his student-loan debts, the facts presented to the Court show that the Debtor was less than 30 years of age, unmarried and the father of one young child. The Debtor presently lives with his son and "girlfriend." The Debtor set forth that at this time, he and his girlfriend are expecting another child. Regarding his health, the Debtor did not disclose the existence of any physical impairment. The Debtor, however, did set forth that he has a mental condition, but not of sufficient severity to cause any permanent disability. (Doc. No. 36, Ex. C & D).

Based upon prior figures submitted to the Court, the Debtor set forth that he had a slight surplus, $153.43, in his monthly budget. The Debtor, however, now claims a slight deficit, $39.52, in his monthly budget. In arriving at this figure, the Debtor reported the following necessary expenditures:

| | |
|---|---|
| $330.00 | Insurance (through employer) |
| $654.00 | Rent |
| $698.00 | Food |
| $424.00 | Transportation, excluding car payment |
| $150.00 | Recreation |

| | |
|---|---|
| $100.00 | Charitable contributions |
| $129.00 | Health Insurance |
| $249.00 | Household Supplies |

(Doc. No. 49, at pg. 9-10).

## DISCUSSION

In this adversary proceeding, the Plaintiff/Debtor, Adam T. Malone, seeks a determination that the educational obligations he owes to the Defendant, New Jersey Higher Education Student Assistance Authority, are dischargeable debts in bankruptcy based upon the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). This determination, as it concerns the dischargeability of particular debts, is deemed to be a "core proceeding." 28 U.S.C. § 157(b)(2)(I). And as a "core proceeding," Congress has conferred upon this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

Either through direct lending or by guaranty, the United States Government has support loans to persons to finance a higher education. In most cases, such credit is extended without regards to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003). This extension of credit on an unsecured basis, however, gave rise to concerns of abuse and of the solvency of the student-loan program. Therefore, based on such concerns, Congress has, since 1976, excluded student loans from the scope of a general bankruptcy discharge. *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738, 742 (6th Cir.1992).

However, this exclusion is not absolute, with bankruptcy law providing that a student-loan obligation may be discharged in the limited circumstance where repaying the loan "would impose an *undue hardship* on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8) (emphasis added). It is a debtor's burden to establish, by at least a preponderance of the evidence, the existence of an "undue hardship." *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3rd Cir.1996). This burden is met by establishing the existence of each of the following three prongs in what has become to be known as the Brunner Test:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;
>
> (3) That the debtor has made good faith efforts to repay the loans.

*Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005), *citing Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987). It is the Defendant's position that, based upon the evidence and record now before the Court, the Debtor cannot carry his burden with respect to any of the prongs of the Brunner test, thus entitling it to summary judgment.

The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure, as made applicable to this Court by Bankruptcy Rule 7056. Under Rule 56(a), it is provided that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A genuine issue of facts exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). In making this assessment, all "inferences to be drawn from the underlying facts . . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the party moving for summary judgment fails to meet their burden, the motion must be denied, regardless of the nonmovant's response. *Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010).

Whether the elements of the Brunner Test are met is a factually intensive inquiry, determined on a case-by-case basis. *Kapinos v. Graduate Loan Center (In re Kapinos)*, 253 B.R. 709, 714-15 (Bankr. W.D.Va. 2000). As a practicable matter, this makes a debtor's burden of raising a genuine issue of material fact less demanding when faced with a motion for summary judgment brought by a creditor on the issue of undue hardship. Therefore, unless the facts are fully developed and undisputed, the entry of judgment against a debtor on the issue of "undue hardship" is generally not appropriate at the summary-judgment stage. *See*, *e.g.*, *In re Gallagher*, 333 B.R. 169 (Bankr. D.N.H.2005). Within this framework, the Court now turns to the first prong of the Brunner test.

The first prong of the Brunner Test asks whether the Debtor would be able to maintain a minimal standard of living if forced to repay his student-loan obligations. As support for his position that he can sustain his burden under the first prong of the Brunner test, the Debtor points to his most recent budgetary figures which show a negative disposable income of $39.52 per month. According to the Debtor, this figure reflects "a bare-bones budget." (Doc. No. 49, at pg. 3). One in which there "are no extras, no frills no emergency funds, no savings, and part of the month left over after the money is gone." *Id.* Thus, according to the Debtor, "the addition of any amount of payment towards the Student loans would break the budget." *Id.*

The essence of the 'minimal standard of living' prong of the Brunner test is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of their student loan creditor(s). *See Rice v. United States (In re Rice)*, 78 F.3d 1144,

1149 (6th Cir.1996). Thus, any analysis concerning the first prong of the Brunner Test must necessarily center around two considerations: (1) the debtor's income; and (2) those expenses which are necessary for the debtor to meet his or her basic needs. *Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 854 (Bankr. N.D.Ohio 2002).

In looking at the Debtor's income and expenses, a couple of matters come to the fore. First, the Debtor's salary is more than a minimal amount, with the Debtor earning $45,572.76 per year. Second, there does exist, as the Defendant points out, an issue as to whether some of the Debtor's expenses are actually necessary. For example, the Debtor allocates almost $500.00 per month for recreation, charitable giving and household supplies.

At the same time, the Debtor may, as he alleges, have legitimate needs for such expenses. Without the benefit of the Debtor's testimony, however, any assessment as to the reasonableness of the Debtor's expenses would be pure speculation. In this regard, it did not go unnoticed that, in an affidavit submitted to the Court, the Debtor set forth that he and his girlfriend presently live in low income government housing. (Doc. No. 50, at pg. 1). Thus, presumably the Debtor's financial situation has been previously examined and a determination made that, even in light of his income, the Debtor is unable to adequately support himself and his son.

For this purpose, the Court is reminded that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As such, given what evidence has been presented, the Court, without the benefit of the Debtor's testimony, is not disposed to make a finding that the Debtor's expenses are unnecessary as applied to the first prong of the Brunner test. A similar analysis applies to the second prong of the Brunner test.

Under the second prong of the Brunner test, it must be shown that there exist additional circumstances which indicate that the debtor's distressed state of financial affairs is likely to persist for a significant portion of the student-loan repayment period. The underlying purpose of this requirement is to ensure that the hardship the debtor is experiencing is actually "undue," as opposed to the garden variety financial hardship experienced by all debtors who file for bankruptcy relief. *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 204 (Bankr. N.D.Ohio 2000).

In assessing whether the Debtor can maintain his burden under the second prong of the Brunner test, the Court agrees with the Defendant that the Debtor does not exhibit what is a common attribute in a dischargeability action brought under § 523(a)(8): A serious medical condition.[1] In fact, the Debtor admitted that he is not permanently disabled. (Doc. No. 36, Ex. D). Moreover, the Debtor's presumably good physical health and young age, being only 30 years old, are not characteristics which easily lend themselves to a favorable finding under the second prong of the Brunner test.

Notwithstanding, in giving the Debtor the benefit of the doubt, the Court is not persuaded that these considerations absolutely exclude him from presenting evidence of his future inability to repay his student loans. The impetus for this conclusion rests upon recent, postpetition changes the Debtor has experienced to his financial condition. Foremost, the Debtor is expecting another child, a situation which will undoubtably impact his future financial situation. Furthermore, with the Debtor having recently found employment, questions regarding the stability of the employment and his chances for future advancement arise. Again, however, without the benefit of the Debtor's

---

1 *Accord Grant v. United States Dept. of Educ. (In re Grant)*, 398 B.R. 205, 212 (Bankr. N.D.Ohio 2008) (second prong of the Brunner test generally requires a serious medical condition or some other unique circumstance to warrant a finding of undue hardship).

testimony, the Court simply cannot make a determination as to how such considerations will impact the Debtor's future ability to repay his student loan obligations.

The same is true of the Debtor's past financial history. When attempting to predict a debtor's future financial situation, as is required by the second prong of the Brunner test, this Court has observed that "[o]ne of the best indicators of what will occur in the future, comes from events that have occurred in the past." *Berry v. Educ. Credit Mgmt. Corp. (In re Berry)*, 266 B.R. 359, 365-66 (Bankr. N.D.Ohio 2000). In this matter, however, in the absence of any testimony from the Debtor, the Court has very little by which to assess the Debtor's past financial history.

The third and final prong of the Brunner test concerns whether the Debtor has made a good faith effort to repay their student loans. In making this determination, a primary consideration, as one would expect, is whether the debtor actually made any payments on the obligation, and if so, the total amount of payments. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr. N.D.Ohio 1999). In this case, again, the circumstances presented to the Court do not bend in the Debtor's favor.

Since he incurred his educational debts, the Debtor has only made one payment toward the obligations. Moreover, the Debtor used a credit card to make this payment, thus converting a potentially nondischargeable debt into a potentially dischargeable debt – hardly an indicator of good faith. In any event, the issue of whether and the extent to which payments were made on a student-loan obligation, while a very important consideration, is not always dispositive.

Besides looking at whether a debtor made any payments toward their student loans, other considerations may be relevant in a good faith analysis. Importantly, this Court has stressed that a good faith analysis may look to whether the Debtor acted responsibly toward their student loans. Factors relevant in this regard include whether a debtor obtained deferments, or simply defaulted,

and whether the debtor sought to participate in a repayment program such as the Income Contingent Repayment Program. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 365 (6th Cir.2007); *Brown v. Am. Educ. Servs., Inc. (In re Brown)*, 378 B.R. 623, 626 (Bankr.W.D.Mo.2007)

As applied to this matter, these factors cut both ways, with the evidence showing that the Debtor obtained a couple of deferments on his student loans. There, however, does not exist any evidence that the Debtor sought to participate in any income based repayment program. The evidence before the Court also shows that the following considerations, which are relevant in good faith analysis, cut both ways:

> (1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;
>
> (2) whether the debtor has realistically used all their available financial resources to pay the debt;
>
> (3) whether the debtor is using their best efforts to maximize their financial potential;
>
> (4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;
>
> (5) the percentage of the student loan debt in relation to the debtor's total indebtedness;
>
> (6) whether the debtor obtained any tangible benefit(s) from their student loan obligation.

*Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr. N.D.Ohio 2002).

In specific terms, considerations four and five do not support the Debtor's position of good faith, with the Debtor having sought bankruptcy relief shortly after graduation, and with the majority of the Debtor's unsecured debt constituting student-loan obligations. Conversely, it would appear

that the Debtor has not obtained any tangible benefit from his student-loan obligations. Moreover, as it concerns the remaining considerations, the Court simply does not have sufficient information before it to make a finding.

For a summary judgment motion, all of the evidence introduced and all of the factual inferences from the evidence must be viewed in a light most favorable to the party opposing the motion and all reasonable doubts about the facts must be resolved in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Consequently, given that there exists indicia in this case which show that the Debtor acted in good faith toward his student loans, summary judgment cannot be granted to the Defendant as it pertains to the third and final prong of the Brunner test.

In conclusion, the Court finds that genuine factual issues exist concerning whether the Debtor is entitled to an undue "hardship discharge" of his student loans pursuant to 11 U.S.C. § 523(a)(8). Therefore, the Defendant is not entitled to summary judgment. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Motion for Summary Judgment filed by the Defendant, New Jersey Higher Education Student Assistance Authority, be, and is hereby DENIED.

***IT IS FURTHER ORDERED*** that the Trial set in this matter for December 6, 2011, shall proceed as scheduled.

Dated: November 22, 2011

Richard L. Speer
United States
Bankruptcy Judge

## *CERTIFICATE OF SERVICE*

Copies were mailed this 22nd day of November, 2011 to:

Adam T Malone
03778 Conkle Rd
Edgerton, OH 43517

John P Goldenetz
519 Perry St
Defiance, OH 43512

Higher Education Student Assistance
PO Box 538
Trenton, NJ 08625

Clinton E. Preslan
1100 Superior Avenue
Cleveland, OH 44114

US Dept of Education
Direct Loan Servicing Center
PO Box 5609
Greenville, TX 74503-6609

Steven M. Dettelbach esweeO6
United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624

/s/ Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court