# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                    )
                                          )   **JUDGE RICHARD L. SPEER**
Adam T. Malone                            )
                                          )   Case No. 10-3113
    Debtor(s)                             )
                                          )   (Related Case: 10-30076)
Adam T. Malone                            )
                                          )
    Plaintiff(s)                          )
                                          )
        v.                                )
                                          )
Higher Education Student Assistance       )
                                          )
    Defendant(s)                          )

### **DECISION AND ORDER**

    This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability. At issue at the Trial was whether the Plaintiff, Adam T. Malone, was entitled to receive a discharge of an educational debt pursuant to the "undue hardship" standard as set forth in 11 U.S.C. § 523(a)(8). At the conclusion of the Trial, the Court took the matter under advisement so as to afford the opportunity to fully consider the evidence and the arguments raised by the Parties. The Court has now had this opportunity and, for the reasons set forth herein, declines to enter a finding of "undue hardship."

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

## BACKGROUND

On January 8, 2010, the Plaintiff/Debtor, Adam Malone (hereinafter the "Debtor"), filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In his schedules, the Debtor reported unsecured debts totaling $60,425.58. The majority of his unsecured debt, $50,836.00, was incurred by the Debtor to finance his attendance at the "Commercial Divers Academy of Eastern Seaboard" where, in February of 2009, the Debtor received a degree in commercial diving.

On April 26, 2010, the Debtor filed a complaint, seeking a determination that his educational obligation to the Defendant was a dischargeable debt based upon the "undue hardship" standard set forth in § 523(a)(8). Against the Debtor's complaint to determine dischargeability, the Defendant filed a Motion for Summary Judgment. On November 22, 2011, the Court entered a Decision and Order, denying the Defendant's Motion for Summary Judgment, and setting the matter for Trial. *In re Malone*, 2011 WL 5869607 (Bankr. N.D.Ohio 2011).

On December 6, 2011, a Trial was held on the Debtor's complaint to determine dischargeability. At the time of the Trial, approximately $50,000.00 was owed to the Defendant. For purposes of the Trial, the Parties stipulated to these facts:

> The Debtor has made one payment on his student-loan obligation to the Defendant.
>
> The Debtor has requested two deferments on his student-loan obligation to the Defendant.
>
> The Debtor is presently employed, earning a gross monthly salary of $3,797.73, equating to $45,572.76 per year.
>
> The Debtor does not suffer from any physical impairment.

Page 2

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

> The Debtor does not suffer from any mental condition which would cause him any permanent disability.

(Doc. No. 57). In addition to these stipulations, the Court, based upon the evidence produced at the Trial, makes the following findings of fact in accordance with Bankruptcy Rule 7052.

## FACTS

The Debtor is a single man, 26 years of age. The Debtor has two young children, and presently lives with his "girlfriend," who is the mother of his two children. The Debtor has a high school education and received a degree in commercial diving from the "Commercial Divers Academy of the Eastern Seaboard." The Debtor financed his education in commercial diving by incurring loans, with the Defendant being the primary lender.

Not long after receiving his degree in commercial diving, the Debtor obtained a remunerative position as a diver. However, due to a lack of steady work, the Debtor left the field of commercial diving, and sought employment elsewhere. (Doc. 58, Ex. A). If the Debtor were to again seek employment in the field of commercial diving, it would be necessary for him to become recertified and undergo an extensive physical examination, a process which could cost upwards of $2,000.00.

After leaving work as a commercial diver, the Debtor experienced a period of unemployment, but eventually was able to secure full-time employment. With his new employer, the Debtor was initially classified as a probationary employee. At the time of the Trial held in this proceeding, however, the Debtor's probationary period with his new employer had ended, resulting in the Debtor becoming a full time, permanent employee. As a permanent employee, the Debtor is afforded certain benefits, including health insurance for himself and his children. The Debtor's status as a permanent employee, however, also means that the Debtor must pay for his uniforms, an expenditure of $25.53 per month.

Page 3

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

In the position he now holds with his present employer, the Debtor does not utilize his degree in commercial diving. Notwithstanding, the Debtor's salary, as well as benefits, from his present employer is comparable to what he expected to initially receive as a full time commercial diver. As stipulated, this salary totals $3,797.73 per month, or $45,572.76 per year. The Debtor explained, however, that while his employment is relatively secure, his salary may be diminished, perhaps by as much as $9,000.00 per year, if he is forced to transfer to a different position within the company on account of not being able to make "rate" in his current position.

After accounting for mandatory deductions from his salary, the Debtor disclosed that he has a net monthly income of $2,697.48. (Doc. No. 58, Ex. F). From this income, the Debtor claimed $2,737.00 in necessary, monthly expenditures, leaving a slight shortfall in his household budget. The Debtor, as he has in the past, expects that for the forthcoming tax year, he will receive a tax refund, both federal and state. At the present, the Debtor's girlfriend, whom he intends to marry at some point in the future, does not contribute to Debtor's household budget.

In terms of specific expenses, and while not a complete list, the Debtor set forth the following itemized expenditures:

| | |
|---|---|
| $654.00 | Rent |
| $698.00 | Food |
| $424.00 | Transportation, excluding car payment |
| $150.00 | Recreation |
| $100.00 | Charitable contributions |
| $129.00 | Health Insurance |
| $249.00 | Household Supplies |

Page 4

(Doc. No. 58, Ex. G). For some of these expenses, the Debtor provided further details.

First, as it regards his rent, the Debtor explained that his rent, which includes utilities, is subsidized by the government. For his $150.00 per month recreation expense, it was the testimony of the Debtor that this expenditure was allocated for small things such as movie rentals and occasional outings to the YMCA and the Eagles club. In turn, it was related that the $100.00 per month expense for charity constituted mainly purchases of gifts to family members and close friends. Finally, the Debtor explained that the $249.00 per month expenditure for "household supplies" included within its scope the necessary cost for diapers which the Debtor estimated to be approximately $125.00 per month.

## DISCUSSION

In this adversary proceeding, the Debtor, Adam Malone, seeks a determination that his educational obligation is a dischargeable debt in bankruptcy based upon the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). A determination concerning the dischargeability of a particular debt is deemed to be a core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), thereby conferring on this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

The Congress of the United States has determined that debts incurred to finance a higher education are not entitled to be discharged in bankruptcy. 11 U.S.C. § 523(a)(8). This exclusion of an educational debt from the scope of a bankruptcy discharge, however, is subject to a limited exception. Under § 523(a)(8), it is provided:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

Page 5

> (8) unless excepting such debt from discharge under this paragraph would impose an *undue hardship* on the debtor and the debtor's dependents, for–
>
>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

(emphasis added). Section 523(a)(8), thus, allows an educational debt to be discharged in the limited circumstance where it can be shown that repaying the obligation would impose upon the debtor and the debtor's dependents an "undue hardship."

The Bankruptcy Code does not define the term "undue hardship." *See* 11 U.S.C. § 101 (lacking a definition for the term). However, it is well-established that the term necessarily denotes a heightened standard, requiring a showing beyond the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief; otherwise, the exception would swallow the rule. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005). To assess whether repaying a student loan would impose upon a debtor an "undue hardship," the Sixth Circuit Court of Appeals has held that a bankruptcy court is to apply what is known as the Brunner test, named after the case from which it originated.[1] *Barrett v. Educational Credit Management Corp.*, 487 F.3d 353, 358 (6th Cir. 2007), citing *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005).

---

[1] *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987).

Page 6

Under the Brunner test, three elements must exist for a debtor to obtain an "undue hardship" discharge of their student-loan debt:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) That the debtor has made good faith efforts to repay the loans.

It is a debtor's burden to show the existence of each of these elements by at least a preponderance of the evidence. *Barrett*, 487 F.3d at 358-59.

In the prior Decision entered in this case, the Court observed that "[w]hether the elements of the Brunner Test are met is a factually intensive inquiry, determined on a case-by-case basis." *In re Malone*, 2011 WL 5869607 *3(Bankr. N.D.Ohio 2011), *citing Kapinos v. Graduate Loan Center (In re Kapinos)*, 253 B.R. 709, 714–15 (Bankr. W.D.Va.2000). Based on this, the Court denied the Defendant's Motion for Summary Judgment, finding that, as applied to all three prongs of the Brunner test, the record in this case was not fully developed, with there remaining too many questions left unanswered. At this point, however, with the Trial in this case having concluded, the record in this case is now complete. Accordingly, the Court turns to address the first prong of the Brunner test: Whether the Debtor can maintain a minimal standard of living for himself and his children if he is required to repay his student-loan obligation to the Defendant?

Page 7

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

### First Prong of Brunner Test

The first prong of the Brunner test is based upon the policy that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of their student-loan creditor(s). *See Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996). To satisfy this requirement, a debtor is not expected to live in abject poverty by depriving themselves of basic necessities. The debtor, however, is expected to use their best efforts to maximize their income within their vocational profile and to do some belt-tightening by foregoing amenities to which the debtor may have become accustomed. *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852, 857-58 (Bankr. N.D.Ohio 2004).

Based upon his budgetary figures, the Debtor shows that, after paying his necessary expenses, he has a slight shortfall in his monthly budget. Such an assertion is characteristic of most debtors who seek a finding of "undue hardship" under § 523(a)(8). Still, it is a basic tenet that the Court is not required to accept, at face value, a debtor's enumerated income and expenses. *Mitcham v. U.S. Dep't of Educ. (In re Mitcham)*, 293 B.R. 138, 144-45 (Bankr. N.D.Ohio 2003). Instead, this Court is under a duty to scrutinize, and in appropriate circumstances adjust, a debtor's income and expenses so as to ensure that such income and expenses reflect a true picture of the debtor's financial situation.

In the Decision addressing the Defendant's Motion for Summary Judgment, the Court was initially concerned by a number of the Debtor's expenses, noting that the Debtor allocates almost $500.00 per month for recreation, charitable giving and household supplies. At the same time, the Court, in denying the Defendant's Motion for Summary Judgment, also remarked:

> Debtor may, as he alleges, have legitimate needs for such expenses. Without the benefit of the Debtor's testimony, however, any assessment as to the reasonableness of the Debtor's expenses would be pure speculation.

Page 8

*In re Malone*, 2011 WL 5869607 *4 (Bankr. N.D.Ohio 2011). At the Trial held in this matter, some of the concerns of the Court were addressed.

One, the Debtor explained that his monthly figure of $249.00 for household supplies included an allocation of $120.00 for diapers, an expense the Court can construe as a necessity for a father of two young children. In addition, the Debtor's monthly expense for recreation, totaling $150.00, while stretching the envelope, nevertheless can be construed as reasonable given the specific nature of this expenditure. The Debtor explained that the expense only encompassed simple items such as expenses for movies and outings to the YMCA and the Eagles club. Such expenditures are hardly extravagant and will thus be allowed in this instance. *See Larson v. United States (In re Larson)*, 426 B.R. 782, 791 (Bankr. N.D.Ill.2010) (allowing an expense for a membership to the Lion's club, and noting that "even under the minimal standard of living test, people must have the ability to pay for some small diversion or source of recreation, even if it is just watching television or keeping a pet."), *quoting McLaney v. Ky. Higher Educ. Assistance Auth. (In re McLaney)*, 375 B.R. 666, 674 (M.D.Ala.2007).

The same, however, cannot be said of the Debtor's expenditure for charity. The Debtor disclosed that he allocates $100.00 per month from his budget for charitable contributions. In doing so, the Debtor explained that the expenditure is not strictly speaking for charity but instead constitutes funds expended for gifts to his children and close family members. Yet, even assuming this to be true, the allocation of $100.00 per month, or $1,200.00 per year, for gifts strikes this Court as unnecessary to maintain a minimal standard of living. *See Lamanna v. EFS Servs., Inc. (In re Lamanna)*, 285 B.R. 347, 354 (Bankr. D.R.I.2002) (in a proceeding brought under § 523(a)(8), disallowing a $100.00 per month expense for gifts).

This is not to say that an expenditure for gifts is absolutely prohibited under the first prong of the Brunner test. Only that $100.00 is excessive for the Debtor when asking whether, under the first prong of the Brunner test, such an allocation is necessary to maintain a "minimal standard of

Page 9

living." The Debtor, thus, would not fail his burden under the first prong of the Brunner test if he occasionally purchased inexpensive gifts for his children.

In any event, disallowing a portion of the Debtor's $100.00 per month expenditure for gifts is not going to provide the Debtor the means by which to repay a $50,000.00 student-loan debt. As stated, before any adjustments are made, the Debtor's monthly budget shows a slight deficit. Additional disposable income, therefore, needs to come from other areas of the Debtor's budget. This, however, does not seem practicable.

In examining the Debtor's budget as a whole it is plain to see that the Debtor has sought to economize in other areas of his budget, thereby lending credence to the Debtor's position that his monthly budget is very tight. For example, the Debtor, although needing a vehicle for transportation to work, does not presently allocate any funds for an auto payment or auto repairs. Morever, in this Court's prior decision it was stated:

> it did not go unnoticed that, in an affidavit submitted to the Court, the Debtor set forth that he and his girlfriend presently live in low income government housing. Thus, presumably the Debtor's financial situation has been previously examined and a determination made that, even in light of his income, the Debtor is unable to adequately support himself and his son.

*Id.*

For these reasons, the Court, after assessing the Debtor's budget in its totality, finds that the Debtor does not have the ability to fully repay his student-loan debt while maintaining for himself and his dependents a minimal standard of living. As such, the Debtor has sustained his burden under the first prong of the Brunner test. A debtor, however, to receive an "undue hardship" discharge of an educational debt, must establish the existence of each of the three prongs of the Brunner test, a burden which, as now explained, he cannot sustain.

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

## Second Prong of Brunner Test

The second prong of the Brunner test requires a debtor to show that additional circumstances exist indicating that their financially distressed state of affairs is likely to persist for a significant portion of the loan's repayment period. This element of the Brunner test goes to the core of the "undue hardship" standard of § 523(a)(8) by ensuring that the financial hardship the debtor is experiencing is actually "undue," as opposed to the garden-variety financial hardship which, by definition, all debtors who seek bankruptcy relief experience. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 778 (Bankr. N.D.Ohio 2007).

In this Court's prior Decision, denying the Defendant's Motion for Summary Judgment, the Court observed that:

> the Debtor does not exhibit what is a common attribute in a dischargeability action brought under § 523(a)(8): A serious medical condition. In fact, the Debtor admitted that he is not permanently disabled. Moreover, the Debtor's presumably good physical health and young age, being only 30 years old, are not characteristics which easily lend themselves to a favorable finding under the second prong of the Brunner test.

*In re Malone*, 2011 WL 5869607 *4. Notwithstanding, the Court, in denying the Defendant's Motion for Summary Judgment, gave the Debtor the benefit of the doubt, holding that postpetition matters, such as changes in the Debtor's job status as well as the impending birth of the Debtor's second child, needed to be considered in light of the Debtor's testimony. *Id.*

The testimony given by the Debtor at the Trial in his matter, however, did not elicit anything which would warrant a favorable finding under the second prong of the Brunner test. A few things stand out in this regard. First, no indication was given that the Debtor's children have any special

Page 11

needs. Second, while there does exist the possibility that the Debtor may incur a reduction in salary, there is also every indication that the Debtor's financial will improve.

At the moment, the Debtor is currently the only wage earner in his household, with his girlfriend, the mother of his children, not presently working. Yet, in the foreseeable future, it was indicated that the Debtor's girlfriend should be able to contribute some level of financial support to her children, thereby relieving the Debtor of some of this responsibility. Moreover, the Debtor indicated that he intends to marry his girlfriend, an event, if it were come to pass, could provide a financial benefit to his household. For example, the Debtor acknowledged that if he were married to his girlfriend, she could be included in his employer-sponsored health plan.

Finally, and of particular import, the testimony elicited from the Debtor at the Trial revealed that the Debtor is now earning a wage comparable to what he expected to initially earn as a commercial diver. The Debtor's current financial situation, thus, cannot be construed as arising from events beyond his control. This is especially significant.

The Sixth Circuit Court of Appeals set forth that, for purposes of the second prong of the Brunner test, the events giving rise to a claim of "undue hardship" must be beyond the debtor's control and stem from conditions that are likely to continue for the foreseeable future. *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir.2005). In the words of the Court:

> Such circumstances must be indicative of a certainty of hopelessness, not merely a present inability to fulfill financial commitment. They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

Page 12

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

*Id.* at 386 (internal citation and quotation omitted).

Accordingly, with an improvement in the Debtor's financial situation possible, and with the Debtor's current financial situation having arisen from events largely within his control, the precedent set forth by the Sixth Circuit Court of Appeals means that this Court cannot enter a finding that the Debtor has sustained his burden under the second prong of the Brunner test. The result is the same for the third prong of the Brunner test.

### Third Prong of the Brunner Test

Under the third prong of the Brunner test, a debtor may only receive an "undue hardship" discharge of their student loan if they show that they have made a good faith effort to repay the obligation. This requirement serves the goal of helping to ensure that a debtor acts responsibly toward their student-loan creditor given that educational loans are in most cases extended without regards to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr.N.D.Ohio 2003).

In this case, the Debtor has only made one payment on his student-loan obligation. Thus, as observed in this Court's prior decision, the Debtor's treatment of his student-loan obligation lacks this important indicator of good faith: "whether the debtor actually made any payments on the obligation, and if so, the total amount of payments."*In re Malone*, 2011 WL 5869607 *5.

To be sure, the Debtor obtained deferments of his student-loan obligations, a possible indicator of good faith. However, as touched upon in this Court's prior Decision, two considerations surrounding the Debtor's student loan also weigh heavily against a finding of good faith. First, the Debtor filed for bankruptcy relief less than one year after graduating. Second, the majority of the

Page 13

Debtor's unsecured debt constituted student-loan obligations. *Floras v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr.N.D.Ohio 2002).

Taken together, these circumstances are necessarily indicative of an otherwise fiscally sound debtor attempting to use the bankruptcy process to quickly receive a free education. This is the type of situation § 523(a)(8) was specifically designed to prevent, with Congress enacting § 523(a)(8) for the express purpose of protecting the student loan program by preventing borrowers from discharging their student loans shortly after graduation. *Santa Fe Medical Services, Inc. v. Segal (In re Segal)*, 57 F.3d 342, 348 (3rd Cir.1995), *citing* 124 Cong.Rec. 1791-98 (1978). Consistent, therefore, with the policy underlying § 523(a)(8), a debtor with mostly student-loan debt, who seeks bankruptcy relief shortly after graduating, needs to offer a very good reason as to the absolute necessity of discharging the educational debt.

Yet, in this case, other than to explain that he felt that he had exhausted all his financial resources, the Debtor offered no further justification for his quick resort to bankruptcy. In deference to the policy of § 523(a)(8), however, this explanation is simply not sufficient. This is particularly true considering that, as already discussed, the Debtor, although not utilizing his degree, has a salary entirely consistent with his expectations. As a result, the Debtor's financial situation cannot be said to have arisen as the result of events beyond his control.

Accordingly, given the lack of any meaningful remuneration toward his student-loan obligation, together with the fact that it appears that the primary impetus behind the Debtor seeking bankruptcy relief was to quickly seek a discharge of his educational debt, the Court cannot find that the Debtor has sustained his burden under the third prong of the Brunner test.

In conclusion, the weight of evidence in this matter does not, for the reasons set forth herein, warrant a finding that the Debtor has met his burden under both the second and third prongs of the

Page 14

Adam T. Malone v. Higher Education Student Assistance
Case No. 10-3113

Brunner test. Consequently, as it is the Debtor's burden to establish each and every element of the Brunner test, the Court cannot find that the "undue hardship" standard for discharging student loans under § 523(a)(8) has been satisfied in this particular case. *O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 565 (7th Cir.2003). In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Plaintiff/Debtor, Adam T. Malone, is not entitled to an "undue hardship" discharge of his student-loan obligation to the Defendant, Higher Education Student Assistance.

***IT IS FURTHER ORDERED*** that the claim held by the Defendant, Higher Education Student Assistance, against the Debtor, Adam T. Malone, is not subject to the discharge injunction of 11 U.S.C. § 524.

***IT IS FURTHER ORDERED*** that the Plaintiff/Debtor's Complaint be, and is hereby, DISMISSED.

Dated: January 20, 2012

/s/ Richard L. Speer

Richard L. Speer
United States
Bankruptcy Judge

Page 15

# CERTIFICATE OF SERVICE

Copies were mailed this 20th day of January, 2012 to:

Higher Education Student Assistance
PO Box 538
Trenton, NJ 08625

Greggory B. Elzey, Jr.
Javitch, Block & Rathbon LLC
140 East Town Street, Suite 1250
Columbus, OH 43215

Clinton E. Preslan
1100 Superior Avenue
Cleveland, OH 44114

Adam T Malone
03778 Conkle Rd
Edgerton, OH 43517

Adam T Malone
540 Pontiac Dr Apt C
Defiance, OH 43512-1423

John P Goldenetz
519 Perry St
Defiance, OH 43512

United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624

                                              /s/Dawn Serna-Gensch
                                              Deputy Clerk, U.S. Bankruptcy Court